CLEM C. AUSTIN, Suing on Behalf of Himself and All Other Stockholders of PACIFIC COAST CEMENT CORPORATION, Similarly Situated, Respondent, *v.* PACIFIC COAST COMPANY, Appellant, et al., Defendants.

*Per Curiam.* The freight contract for transportation of lime rock at ninety cents per ton from Alaska to Seattle, Washington, of which respondent complains, providing for adjustments with respect to fuel and labor costs and containing a minimum guaranty of 175,000 tons, has been found, upon sufficient evidence, to have been fair and advantageous when entered into in 1928 between Pacific Coast Cement Company — herinafter referred to as " Cement " — and Pacific Coast Steamship Company — hereinafter referred to as " Steamship ". Such a contract was required by the holders of Cement's bonds, and, at their instance, this contract provided that it would remain in effect as long as any of such bonds were to be outstanding. The freight contract was in effect at all times mentioned herein. The circumstance that both of these corporations were subsidiaries of the Pacific Coast Company is not a sufficient ground on which to vacate this freight contract in view of these findings based on the evidence. When, later, Cement, which had nearly become bankrupt due to competition from an independent enterprise known as Superior Portland Cement, Inc.— hereinafter referred to as " Superior " — leased its plant to the latter as part of a joint venture upon terms which required Superior to pay but fifty cents per ton to recompense Cement, Cement was simply making the best bargain possible under the circumstances. It dealt with Superior at arm's length. Superior had its own quarry near Seattle, and was not obliged to transport lime rock from Alaska for its own use or for the use of the joint venture with Cement, and it refused to pay more than fifty cents a ton, which was all that it would have had to spend if the lime rock were transported from its own quarry. Cement desired that its plant be kept in operation with lime rock supplied from its quarries in Alaska, and was under binding agreement with Steamship to pay for shipment of the minimum quantity provided for in the 1928 contract between them at ninety cents per ton. The failure of Cement to obtain indemnification from Superior of more than fifty cents a ton, and to get Superior to agree to as large a guaranteed minimum as was provided in the contract between Cement and Steamship, was offset by the favorable terms agreed upon with Superior in respect to the distribution of the profits of the joint enterprise, and the fifty-cent figure and lower guaranteed minimum were arrived at in consideration of such division of profits. The outcome of the joint venture between Cement and Superior proved to be very profitable to Cement, and saved it from bankruptcy. Plaintiff, who is a minority stockholder of Pacific Coast Cement Corporation (which owned all of the stock of Cement), has no cause to complain that the agreement between Cement and Superior did not supply complete indemnification to Cement for the liability which the latter had previously undertaken to Steamship.

The judgment appealed from should be reversed, with costs, and the complaint dismissed. Inconsistent findings should be reversed and appropriate new findings made. Settle order.

Peck, P. J., Glennon, Van Voorhis, Shientag and Heffernan, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed. Inconsistent findings reversed and appropriate new findings to be made. Settle order on notice.